IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHN DOE,                          )
                                   )
      Plaintiff,                   )
                                   )
v.                                 )    CIVIL CASE NO. 2:24-cv-455-ECM
                                   )    [WO]
THE ALABAMA DEPARTMENT OF          )
CORRECTIONS, *et al.*,             )
                                   )
      Defendants.                  )

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

Now pending before the Court is the Plaintiff's motion for leave to proceed under a pseudonym. (Doc. 6).[1]  The Plaintiff—an adult male—seeks to shield his identity from public view because his allegations require public disclosure of sexual assault and illegal drug use, which he claims "would be too invasive" and "deter [him] from presenting evidence to this Court." (*Id.* at 2).  On September 8, 2024, the Plaintiff filed an amended complaint against the Alabama Department of Corrections ("ADOC"), Gwendolyn Givens, Scotty Shaffer, Artchie Giddy, Keith Roach, Deborah Toney, Chadwick Crabtree, William Streeter, Denice McKenzie, Jeremy Pelzer, Christopher Gordy, Christopher Webster, Ernest Stirling, John Hutton, Ronald Carter, Teresa Domec, and Maurice Gipson[2]

---

[1] The Plaintiff filed a reply in support of his motion for leave to proceed under a pseudonym. (*See* doc. 41). The Court considered the reply (doc. 41) and the Plaintiff's sealed declaration (doc. 40-2) when evaluating the Plaintiff's motion (doc. 6).

[2] The Clerk of Court entered default against Defendant Maurice Gipson because he "failed to plead or otherwise defend," as required by Federal Rule of Civil Procedure 55(a). (Doc. 57).  The Plaintiff also

(collectively the "Defendants") in this Court for claims stemming from alleged mistreatment during his incarceration from 2022 to May 2024. (*See e.g.*, doc 11 at 1; *id.* at 17–18, paras. 88–96; *id.* at 43, para. 302).[3]  The Plaintiff is no longer incarcerated and remains on parole. (Doc. 6 at 5).

The Defendants oppose the Plaintiff's motion for leave "to the extent that the Plaintiff seeks to keep his identity secret from the public." (Doc. 39 at 1).  The Plaintiff notes that he "will identify himself to [the] Defendants under seal[,] so the[] [Defendants] will suffer no risk of unfairness." (*Id.*).  The issue is fully briefed and ripe for review.  For the reasons that follow, the Plaintiff's motion for leave to proceed under a pseudonym (doc. 6) is due to be DENIED.

## II.  STANDARD OF REVIEW

"A lawsuit is a public event.  Parties who ask a court to resolve a dispute must typically walk in the public eye." *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1242 (11th Cir. 2020) (per curiam).  Requiring parties to walk in the public eye reflects the "customary and constitutionally-embedded presumption of openness in judicial proceedings." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981).[4]  Thus, parties to a lawsuit must generally "identify themselves in their respective pleadings." *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992).  The Federal Rules require that "every pleading" filed in federal

---

brings claims against "Defendant Reece" and "Kilby CO John Doe." (Doc. 11 at 9–10, paras. 28–29).  The record contains no evidence that the Plaintiff served "Defendant Reece" or "Kilby CO John Doe."

[3] For clarity, the Court refers to the document and page numbers generated by CM/ECF.

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.

court "must name all the parties." FED. R. CIV. P. 10(a).  Rule 10(a) "serves more than administrative convenience.  It protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Frank*, 951 F.2d at 322.  The "strong presumption in favor of parties[] proceeding in their own names" also protects a defendants' "right[s] to know who their accusers are," which prevents "embarrassment or fundamental unfairness." *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011).

This presumption—while strong—is not limitless.  A party may proceed anonymously in federal court by establishing "a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Chiquita*, 965 F.3d at 1247 (citing *Plaintiff B*, 631 F.3d at 1315–16).  Parties may qualify for this "narrow exception" and proceed pseudonymously "only in 'exceptional case[s].'" *Id.* (alteration in original) (citing *Frank*, 951 F.2d at 323).

Whether a party's substantial privacy right "outweighs the presumption of openness is a 'totality-of-the-circumstances question.'" *Doe v. Neverson*, 820 F. App'x 984, 986 (11th Cir. 2020)[5] (quoting *Chiquita*, 965 F.3d at 1247 n.5).  A court "should carefully review *all* the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Chiquita*, 965 F.3d at 1247 (emphasis in original) (citing *Plaintiff B*, 631 F.3d at 1316).  The Court reviews five factors to determine whether the Plaintiff's substantial privacy right outweighs the presumption of openness in judicial proceedings:  whether the

---

[5] The Court here, and elsewhere in the Opinion, cites to nonbinding authority.  While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

party seeking anonymity (1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of the utmost intimacy; (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution; (4) faces a real threat of physical harm absent anonymity; and (5) poses a unique threat of fundamental unfairness to the Defendants.[6] *Chiquita*, 965 F.3d at 1247.

## III. DISCUSSION

At bottom, the Court's task is to determine, based on a review of the totality of the circumstances, whether the strong presumption of openness in federal judicial proceedings, should yield to a party's substantial privacy rights. The Court evaluates each of the five *Chiquita* factors as part of its totality-of-the-circumstances review.

## A. Challenging Government Activity

Citing nonbinding case law from outside this Circuit, the Plaintiff suggests that courts find anonymous litigation more appropriate when the defendant is a government entity. (Doc. 6 at 2–3). The Plaintiff's interpretation here carries little weight. This Circuit's precedent "does not stand . . . for the proposition that there is more reason to grant a plaintiff's request for anonymity if the plaintiff is suing the government . . . the fact that Doe is suing the [government] *does not weigh in favor* of granting Doe's request for anonymity." *Frank*, 951 F.2d at 324 (emphasis added). "[I]n only a very few cases challenging governmental activity can anonymity be justified." *Stegall*, 653 F.2d at 186.

---

[6] The Eleventh Circuit also instructs courts to evaluate "whether the party seeking anonymity is a minor." *Chiquita*, 965 F.3d at 1247. Here, it is undisputed that the Plaintiff "is a resident of Alabama in his late twenties." (Doc. 11 at 1). Therefore, the Plaintiff has been an adult during all relevant parts of this litigation—from his alleged mistreatment during his incarceration to the filing of this lawsuit—which weighs against anonymity.

"[N]o published opinion . . . has ever permitted a plaintiff to proceed anonymously merely because the complaint challenged government activity." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 686 (11th Cir. 2001).

Here, the Plaintiff sues two distinct types of Defendants: (1) the ADOC, a government entity, and (2) current and former ADOC employees in their individual capacities. The Defendants do not dispute that the ADOC's actions constitute government activity. However, naming a government entity as a defendant and challenging its actions—standing alone—does not establish a right to proceed pseudonymously. *See Freedom From Religion Found., Inc. v. Emanuel Cnty. Sch. Sys.*, 109 F. Supp. 3d 1353, 1357 (S.D. Ga. 2015). Suing the government "does not weigh in favor of granting Doe's request for anonymity." *Frank*, 951 F.2d at 324. If the Plaintiff only sued the ADOC, the Court's inquiry would end in equipoise—its scales would remain balanced—neither for nor against the Plaintiff's plea to proceed pseudonymously.

But the Plaintiff also levies claims against current and former ADOC employees in their *individual* capacities, which tips the Court's scales against anonymity. The Plaintiff alleges that certain Defendants: (1) beat and punched him (doc. 11 at 59, para. 432) and (2) failed to protect prisoners from known threats to their safety (*id.* at 29, para. 194). Put plainly, the Plaintiff's suit challenges more than government action. The Plaintiff's allegations implicate the individual Defendants' reputations, which may result in economic harm, merely because they were sued in their individual capacities. *See S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) [hereinafter *SMU*]. The Plaintiff sues more than a faceless government entity, rather he

names and accuses individual ADOC employees of violating federal and state law. Despite the Plaintiff's framing, this factor counsels against his request to proceed pseudonymously. *See e.g.*, *id.* ("Basic fairness dictates that those among the defendants' accusers who wish to participate in this suit as individual party plaintiffs must do so under their real names."). Next, the Court evaluates the second of the five *Chiquita* factors—whether the Plaintiff would be compelled, absent anonymity, to disclose information of the utmost intimacy.

## B.    Information of the Utmost Intimacy

Here, the Court considers whether the Plaintiff "would be compelled, absent anonymity, to disclose information of [the] utmost intimacy." *Chiquita*, 965 F.3d at 1247. Although broadly construed colloquially, information of the utmost intimacy has been narrowly applied. This Circuit has held that a plaintiff's privacy rights can trump the presumption of public disclosure "'[w]here the issues involved are matters of a sensitive and highly personal nature,' such as birth control, abortion, homosexuality[,] or the welfare rights of illegitimate children or abandoned families." *SMU*, 599 F.2d at 712–13 (citation omitted). The Eleventh Circuit has also held that the social stigma attached to a plaintiff's disclosure of, "mental illness" for example, can "overcome the presumption of openness in court proceedings." *Neverson*, 820 F. App'x at 988 (citing *Frank*, 951 F.2d at 324). Therefore, the case law suggests that the type of information which could qualify as of the "utmost intimacy" is cabined to a narrow set of circumstances. The Plaintiff argues, absent anonymity, he would be forced to disclose his sexual assaults, opioid use disorder, and repeated overdoses, which he contends qualifies as information of the utmost intimacy.

(Doc. 6 at 3). The Court addresses the Plaintiff's sexual assault allegations and substance use separately.

### 1.    Sexual Assault

Prison sexual assaults are frightenedly frequent, and their detrimental impact is immeasurable. (*See* doc. 41 at 3) (citing *Farmer v. Brennan*, 511 U.S. 825, 853 (1994) (Blackmun, J., concurring) ("Prison rape not only threatens the lives of those who fall prey to their aggressors, but is potentially devastating to the human spirit.")). Although sexual assault is undoubtedly deeply unnerving, "courts have often denied the protection of anonymity in cases where plaintiffs allege sexual assault, even when revealing the plaintiff's identity may cause [him] to 'suffer some personal embarrassment.'" *Plaintiff B*, 631 F.3d at 1316 (citing *Frank*, 951 F.2d at 324). The Court focuses its inquiry on the purported "social stigma" attached to the Plaintiff's disclosure and the Eleventh Circuit's decision in *Plaintiff B*, which the Plaintiff argues supports his cause for anonymity. (*See* doc. 41 at 3).

The Plaintiff argues that the social stigma attached to his allegations "that he was the victim of rape . . . overcomes the presumption of openness in court proceedings." (Doc. 6 at 4). Bringing a lawsuit routinely requires disclosures of personal details. These disclosures range from revealing financial information required to proceed in forma pauperis to the extremely sensitive allegations in this case—both of which could lead to social stigma. A plaintiff's revelation of intimate or personal details that could lead to stigma, does not automatically entitle a plaintiff to anonymity. This comports with the strong presumption that proceedings remain open—otherwise a large percentage of

litigation would occur in secret. The weighty decision to disclose sexual assault allegations may cause personal distress; however that discomfort is often insufficient to overcome the presumption of openness in judicial proceedings. *See Plaintiff B*, 631 F.3d at 1316 (citing *Frank*, 951 F.2d at 324).

The Plaintiff alleges that he "suffer[s] emotional distress from even thinking about these events and [is] unable to talk about them openly even with close family members." (Doc. 40-2 at 1, para. 2). However, the Plaintiff fails to cite any binding case law which supports anonymity under these circumstances. The Eleventh Circuit recently held that a district court failed to consider the social stigma associated with the plaintiff's sexual assault disclosure when she was "from a devout Muslim family from Trinidad" who argued that the disclosure "would bring shame to her and her family because of their cultural and religious conditions." *Neverson*, 820 F. App'x at 985. Here, the Plaintiff's allegations resemble "personal embarrassment" more than the social stigma suffered by the plaintiff in *Neverson*. Therefore, the alleged social stigma associated with public disclosure fails to persuade the Court that the Plaintiff should proceed anonymously.

Further, *Plaintiff B* weighs against the Plaintiff proceeding pseudonymously for three reasons. First, the Eleventh Circuit reiterated that the information of the utmost intimacy standard typically applies to a narrow set of cases—abortion, prayer, and personal religious beliefs—which are not present here. *See Plaintiff B*, 631 F.3d at 1316. Second, the Eleventh Circuit explicitly acknowledged that "courts have often denied the protection of anonymity in cases where plaintiffs allege sexual assault." *Id.* Third, the facts and circumstances surrounding *Plaintiff B* are inapposite to the Plaintiff's case.

In *Plaintiff B*, the Eleventh Circuit vacated and remanded the district court's denial of a motion to proceed under a pseudonym. *Id.* at 1319. There, anonymous plaintiffs sued the creator of a video franchise designed to exploit women—often underaged—by depicting them in "short scenes . . . in various stages of undress and engaged in different types of sexual activities." *Id.* at 1312. Relevant here, the Eleventh Circuit "direct[ed] the district court to enter an order granting the motion to remain anonymous for [p]laintiffs B and V." *Id.* at 1319. The plaintiffs were minors filmed involuntarily engaging in graphic sexual conduct. *Id.* at 1317. A denial of anonymity would forever link the plaintiffs' names with the allegations in the lawsuit. Indeed, the plaintiffs presented "convincing" evidence that "they will permanently be linked with the videos containing the footage" which audiences "of voyeurs, pornographic consumers, and pedophiles" will readily consume for the express purpose of viewing underage sexual conduct. *Id.* at 1318. Thus, the proposed disclosure of plaintiffs' B and V identities, given the graphic nature of the underage conduct, constituted a matter of the utmost intimacy. *Id.* at 1317.

The Plaintiff unquestionably alleges that he was sexually assaulted on four separate occasions by other male prisoners. (Doc. 41 at 3). Unlike the plaintiffs in *Plaintiff B*, the Plaintiff was an adult when these events transpired. The court in *Plaintiff B* discussed the importance of the plaintiffs' ages and its impact on its anonymity inquiry. The plaintiffs' allegations involved "sexual conduct while they were *minors*." *Plaintiff B*, 631 F.3d at 1317 (emphasis added). The Eleventh Circuit stressed that disclosing the information was viewed "in light of their *ages* at the time of the filming" and that the filmed conduct "includes a lengthy and explicit session of homosexual intimacy . . . with another *underage*

woman." *Id.* (emphases added).  Courts often deny the protection of anonymity in cases where plaintiffs allege sexual assault.  Despite the Plaintiff's unsettling sexual assault allegations, he fails to show that he would be forced to disclose information of the utmost intimacy.  Therefore, the utmost intimacy inquiry, as applied to the Plaintiff's sexual assault allegations, does not weigh in favor of anonymity.

### 2.    Substance Use

The Plaintiff argues that his opioid use disorder diagnosis and repeated drug overdoses comprise information of "the utmost intimacy" because the "social stigma attached to [the] Plaintiff's disclosure . . . overcomes the presumption of openness in court proceedings." (Doc. 6 at 3–4).  The Plaintiff's argument for anonymity under the second factor fails on two separate grounds:  the Plaintiff fails to show that (1) the social stigma associated with publicly disclosing his substance use overcomes the presumption of openness in judicial proceedings and (2) the disclosure of his substance use qualifies as information of the utmost intimacy and supports anonymity.

The Plaintiff's position finds no support in this Circuit's precedent.  Although there is likely some social stigma attached to substance use, the Eleventh Circuit has never held that the social stigma associated with drug use overcomes the presumption of openness in federal proceedings. *See Frank*, 951 F.2d at 322, 324 (holding that a plaintiff who "report[ed] to work under the influence of alcohol" was not permitted to proceed anonymously because "the stigma involved in Doe's disclosure does not rise to the level necessary to overcome the presumption of openness in judicial proceedings.").

10

The Plaintiff does not identify any decisions in this Circuit which hold that publicly disclosing drug use qualifies as information of the utmost intimacy—thus permitting a Plaintiff to proceed pseudonymously. *See Doe v. Fla. Gulf Coast Univ. Bd. of Trs.*, 2024 WL 4224254 (11th Cir. 2024) ("To the extent Doe argues that information about his . . . drug use is of the utmost intimacy, that position finds no support in our precedent, and this information isn't anything like what we have previously held falls into this category."). Therefore, the disclosure of the Plaintiff's substance use does not weigh in favor of anonymity. The Court now turns to the third *Chiquita* factor—whether the Plaintiff would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution.

## C.    Intent to Engage in Illegal Conduct

The Court must determine whether the Plaintiff would be compelled, absent anonymity, to admit "an *intent* to engage in illegal conduct and thus risk criminal prosecution." *Chiquita*, 965 F.3d at 1247 (emphasis added). The Plaintiff admits he engaged in criminal activity, the illegal possession of controlled substances while incarcerated, which violates Alabama law. (Doc. 6 at 4); *see* ALA. CODE § 13A-12-212. The Plaintiff contends this admission exposes him to criminal liability, which supports his plea for anonymity. (Doc. 6 at 4). However, he does not admit an intent to engage in further illegal activities. The Plaintiff argues that *SMU* supports his position that courts allow anonymity where plaintiffs "had to admit that they either had violated state laws or government regulations or wished to engage in prohibited conduct." (*Id.*) (citing *SMU*, 599 F.2d at 713).

11

*SMU* is inapposite, there the court provided three examples where plaintiffs admitted they violated the law or wished to engage in prohibited conduct. *SMU*, 599 F.2d at 713 nn. 8–10 (citing *Roe v. Wade*, 410 U.S. 113, 116, 120 (1973) (constitutional challenge to state criminal abortion legislation); *Doe v. Commonwealth's Att'y for City of Richmond*, 403 F. Supp. 1199, 1200 (E.D. Va. 1975) (male plaintiffs challenged the constitutionality of a Virginia statute criminalizing sodomy); *Doe v. Shapiro*, 302 F. Supp. 761, 761–62 (D. Conn. 1969) (challenge to state welfare department regulation providing for termination of benefits to illegitimate children if mother refuses to disclose the name of the child's father.)).  Each case challenged the constitutionality of government activity.

Contrary to cases like *Roe*, *Commonwealth's Attorney for City of Richmond*, and *Shapiro*, the Plaintiff is not challenging the constitutionality of his illegal activity: possession of controlled substances.  Further, the Plaintiff does not admit an intent to violate Alabama law in the future.  Even accepting that the Plaintiff's previous possession of controlled substances partly satisfies the third *Chiquita* factor, the Plaintiff still fails to show he "risk[s] criminal prosecution." *Chiquita*, 965 F.3d at 1247.

At least one of the Defendants, the ADOC, was likely aware of the Plaintiff's illicit drug use before this lawsuit was filed.  On March 8, 2022,[7] the Plaintiff while incarcerated at Bibb Correctional Facility "overdosed from drugs in dorm A-1 . . . [and] [n]urses administered Narcan to [the] Plaintiff four times to revive him." (Doc. 11 at 36, para. 258).  Therefore, one of the Defendants, the ADOC, was credibly aware of the Plaintiff's use and

---

[7] The Plaintiff's 2022 conduct falls well within the five-year statute of limitations period for unlawful possession or receipt of controlled substances. *See* ALA. CODE § 15-3-1.

possession of illicit substances, before this lawsuit was filed.  The Plaintiff's lawsuit simply *recognizes* his illicit conduct, but it does not *reveal* his drug use to the ADOC.  Rather, the Plaintiff's own self-admitted conduct—drug use—was known to prison staff, such that a prosecution could proceed regardless of whether the Plaintiff is permitted to proceed under the cloak of anonymity.

Further, the Plaintiff has not credibly alleged that prosecution is imminent or forthcoming. *Cf. Fla. Gulf Coast Univ. Bd. of Trs.*, 2023 WL 5830406 (M.D. Fla. 2023) (noting that the plaintiff seeking anonymity did not allege that criminal charges were forthcoming), *aff'd*, 2024 WL 4224254 *1, *4 (11th Cir. 2024).  Prosecuting this lawsuit does not require the Plaintiff to admit an intention to continue possessing and using illicit substances, and the Plaintiff does not argue that it is unconstitutional to punish him for his substance use.  Instead, the Plaintiff seeks to use his participation in illegal conduct as a shield to prevent the public disclosure of his name and possibly limit his exposure to criminal liability.  Prosecuting this case pseudonymously does not further that goal because the ADOC was conceivably aware of the Plaintiff's conduct before the Plaintiff filed this lawsuit.  Additionally, the Plaintiff does not allege that criminal charges are imminent or forthcoming.  After careful consideration of the Plaintiff's arguments, the Court finds that this factor does not weigh in favor of granting his request to proceed pseudonymously.  The Court continues its analysis with the fourth *Chiquita* factor—whether the Plaintiff faces a real threat of physical harm absent anonymity.

D.    **Real Threat of Physical Harm**

The Plaintiff alleges that he "faces a real risk of harm absent anonymity" and that proceeding publicly "presents a real risk [that the] Plaintiff will face retaliatory physical harm." (Doc. 6 at 4).  The Plaintiff states that he "will [privately] identify himself to [the] Defendants under seal." (*Id.* at 5).  Here, two separate disclosures could occur:  (1) to the Defendants under seal and (2) to the public.  The Court analyzes the ramifications of each disclosure and whether they implicate a real threat of physical harm in turn.

The Plaintiff's willingness to privately disclose his name weighs against a finding of a real threat of physical harm, particularly from the named Defendants.  The Plaintiff is no longer incarcerated and remains on parole.  Outside of state custody, the Plaintiff no longer lives in a confined space—forced to confront his alleged assailants.  The Plaintiff notes that he has "first-hand knowledge of the lawlessness and violent tendencies of certain correctional officers including those working with prisoner drug dealers and criminal gangs operating within and outside of the prisons." (Doc. 41 at 4).  The Plaintiff alleges that one of the Defendants "is affiliated with a criminal gang and this officer allowed prisoners to abuse and attack him." (Doc. 6 at 4).  He states "[i]f these officers knew my name was on this lawsuit, I believe they would not hesitate to use physical violence against me." (Doc. 40-2 at 2, para. 25).  The disconnect between the Plaintiff's statements is clear. He acknowledges that he will disclose his name to the Defendants under seal but simultaneously fears reprisal from the very disclosure he offers to make.  Because the Plaintiff states that he will provide his name to the Defendants under seal, this disclosure cuts against his claim that he is subject to a real threat of physical harm.

14

In addition to fearing the named Defendants, the Plaintiff fears public disclosure of his identity because he would be at risk of retaliatory physical violence from outside forces, namely criminal gangs and other correctional officers. (Doc. 6 at 4, para. 4; doc. 41 at 4). Further, the Plaintiff notes he "regularly encounters several correctional officers who are co-workers of the named Defendants, are correctional officers [he] alleges by name in the [amended] Complaint that he saw engage in the s[ale] and distribution of drugs within ADOC facilities, or are correctional officers who used physical violence against him while he was incarcerated." (*Id.*).

Setting aside the Plaintiff's private disclosure of his identity to the Defendants under seal, the Court notes that the expectation of "violent reprisals" or "hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity." *Stegall*, 653 F.2d at 186. The Plaintiff "remain[s] in great fear of retaliation from ADOC correctional officers who [he] run[s] into on a weekly basis." (Doc. 40-2 at 2, para. 20). He claims that he routinely interacts with an individual, not currently named as a Defendant, who allegedly physically assaulted him. (*Id.* at 2, para. 24); *cf. Chiquita*, 965 F.3d at 1248 (noting that the plaintiffs failed to provide specific evidence of threats of violence). The Plaintiff's sworn declaration, under penalty of perjury, suggests that the public disclosure of his identity could result in the threat of physical harm, which weighs in favor of anonymity.

At bottom, although the private disclosure of his name to the named Defendants weighs partly against a finding of a real threat of physical harm, the Plaintiff has demonstrated that the public disclosure of his identity may result in the threat of physical

harm.  Therefore, the Court finds that in totality, the fourth *Chiquita* factor weighs in favor of anonymity.  Although parts of this factor favored the Plaintiff's cause, the Court's overall analysis requires a balancing of multiple factors as part of a totality-of-the-circumstances test.  This one factor slightly weighing in his favor alone does not justify proceeding anonymously.  Next, the Court evaluates the fifth and final *Chiquita* factor— whether the Plaintiff's proposed anonymity poses a unique threat of fundamental unfairness to the Defendants.

### E.    Fundamental Unfairness

The Court finds that the Plaintiff's argument for the fifth *Chiquita* factor weighs in favor of anonymity.  The Plaintiff argues that by disclosing his identity to the Defendants under seal, his public anonymity "does not pose a risk of fundamental unfairness to [the] Defendants." (Doc. 6 at 5).  The Defendants claim they "have the right to know who their accusers are, as they may be subject to embarrassment or fundamental unfairness if they do not." (Doc. 39 at 2) (citing *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005)).  Because the Plaintiff will disclose his identity to the Defendants under seal, the Defendants would know their accuser even if the Court granted the Plaintiff's motion to proceed pseudonymously.   Additionally, the Defendants fail to articulate how proceeding anonymously in a public forum would be fundamentally unfair.  Thus, the Court finds the lack of fundamental unfairness weighs in favor of anonymity.

### F.    The Totality of the Circumstances Weighs Against Anonymity

The careful balancing of this totality-of-the-circumstances inquiry supports public disclosure of the Plaintiff's identity.  "Lawsuits are public events." *Frank*, 951 F.2d at 324.

Requiring parties to walk in the public eye "protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Id.* at 322. Our system of governance strongly favors open judicial proceedings and provides a "narrow exception" to allow parties to use fictitious names only in exceptional cases." *Chiquita*, 965 F.3d at 1247. After considering the record evidence, the parties' briefing, and the totality of the circumstances, the Court is not convinced that this case presents an exceptional circumstance warranting anonymity.

In summary, the five *Chiquita* factors, and the totality of the circumstances weighs against anonymity. First, the Plaintiff does more than challenge government activity and sues several Defendants in their individual capacities, which cautions against anonymity. The individually named Defendants are at risk of reputational harm and basic fairness dictates that the parties proceed openly. *SMU*, 599 F.2d at 713. Second, the Plaintiff failed to show that his sexual assault or substance use qualified as information of the utmost intimacy, weighing against anonymity. Courts routinely deny anonymity in sexual assault cases and interpret information of the utmost intimacy narrowly. Further, the Eleventh Circuit has never held that disclosure of drug use qualifies as information of the utmost intimacy. Third, the Plaintiff failed to show that he risked criminal prosecution for any prior drug use, weighing against anonymity. Fourth, the scales tip in favor of anonymity regarding a real threat of physical harm. Although the Plaintiff's willingness to disclose his identity under seal cuts against his requested anonymity, the potential for public reprisal tips the scales slightly in his favor. Finally, the Defendants failed to argue that the Plaintiff's public anonymity would result in fundamental unfairness, supporting

17

anonymity.  At bottom, three factors clearly show that the Plaintiff has not overcome the strong presumption of openness in judicial proceedings.  Additionally, because the Plaintiff is an adult and is no longer incarcerated, the Court finds these factors further weigh against anonymity.

Our adversarial system often requires parties to disclose distressing information in pursuit of their requested relief.  The Plaintiff's allegations of sexual assault and substance use—while alarming—are no different.  The Court weighed the critical factors and finds that the Plaintiff failed to overcome the strong presumption favoring openness in judicial proceedings.  The Plaintiff must proceed in the public eye.

## IV.  CONCLUSION

For the reasons stated, it is hereby ORDERED as follows:

1.     The Plaintiff's motion for leave to proceed under a pseudonym (doc. 6) is DENIED.

2.     The Plaintiff's declaration (doc. 40-2) will remain under seal until further order of the Court.

DONE this 27th day of March, 2025.

                    /s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE